**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

**JOSEPH D. ROBINSON, individually as Father**
**and Legal Guardian of the Minor Child**
**E.R.; and**
**BRANDY T. ROBINSON, individually as Mother**       **Docket No.:_____**
**and Legal Guardian of the Minor Child E.R., and**
**as next of friends of E.R, a Minor Child,**

                                                        **JURY DEMANDED**

        **Plaintiffs,**
**vs.**

**ALCOA CITY SCHOOLS BOARD OF EDUCATION**
**d/b/a ALCOA CITY SCHOOLS;**
**DR. BRIAN BELL, Individually and as Director of**
**Alcoa City Schools;**
**MICHELLE KNIGHT, Individually and as Principal of**
**Alcoa Intermediate School; SCOTT PORTER, Individually**
**And as Principal of Alcoa Middle School; JOSH STEPHENS**
**Individually and as Athletic Director of Alcoa City Schools;**
**And BRIAN GOSSETT, Individually and as an Employee of**
**Alcoa City Schools,**

        **Defendants.**

---

## COMPLAINT

---

        Comes the Plaintiffs, by and through counsel, and for their causes of actions against the

Defendants, state as follows:

## I.    INTRODUCTION

        1.    The minor Plaintiff, E.R., joined by his parents and next of friends, Joseph D.

Robinson and Brandy T. Robinson, bring this action and seek recovery for the damages E.R. has

suffered as a result of Defendants' violations of the Education Amendments of 1972 (Title IX),

42 U.S.C. § 1983, and other federal and state laws described in this Complaint. Plaintiffs also seeks punitive damages in an amount sufficient to deter Defendants from violating others' rights in the future.

## II.     JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law, specifically claims made under the Education Amendments of 1972 (Title IX), 20 U.S.C § 1681 et seq., and the Fourteenth Amendment to the United States Constitution under 42 U.S.C. § 1983.

3.      This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, as it forms part of the same case or controversy stemming from the allegations that form the basis of the federal claims.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as all relevant facts giving rise to this case and damages sustained by Plaintiff occurred in Blount County, Tennessee, which is a part of the United States District Court for the Eastern District of Tennessee.

## III.     PARTIES

5.      The preceding allegations 1-4 are incorporated herein by reference.

6.      Plaintiff E.R. is a minor citizen and resident of Blount County, Tennessee.

7.      Joseph D. Robinson and Brandy T. Robinson are adult citizens and residents of Blount County, Tennessee and are the natural parents and next of friends of E.R.

8.      Defendant Alcoa City Board of Education d/b/a ACS, ("ACBE" or "ACS") is a government entity organized to operate, manage, and control public schools, including Alcoa Intermediate School ("AIS") and Alcoa Middle School ("AMS"), in Blount County, Tennessee.

Service of process may be affected on John E. Owings, Attorney for the Alcoa City Board of Education and Alcoa City Schools, at 800 Riverview Tower, 900 S. Gay Street, Knoxville, TN 37902-1800.

9.     Defendant ACBE is a recipient of federal funds within the meaning of 20 U.S.C. § 168l(a).

10.     Defendant Dr. Brian Bell is a resident of Blount County, Tennessee, and at all relevant times was the Director of ACS and employed by and in the course and scope of this employment with Defendant ACBE. Service of process may be affected on John E. Owings, Attorney for the Alcoa City Board of Education and Alcoa City Schools, at 800 Riverview Tower, 900 S. Gay Street , Knoxville, TN 37902-1800.

11.     Defendant Michelle Knight is a resident of Blount County, Tennessee, and at all relevant times was the Principal of AIS and employed by and in the course and scope of her employment with Defendant ACBE. Service of process may be affected on John E. Owings, Attorney for the Alcoa City Board of Education and Alcoa City Schools, at 800 Riverview Tower, 900 S. Gay Street, Knoxville, TN 37902-1800.

12.     Defendant Scott Porter is a resident of Blount County, Tennessee, and at all relevant times was the Principal of AMS and employed by and in the course and scope of his employment with Defendant ACBE. Service of process may be affected on John E. Owings, Attorney for the Alcoa City Board of Education and Alcoa City Schools, at 800 Riverview Tower, 900 S. Gay Street, Knoxville, TN 37902-1800.

13.     Defendant Josh Stephens is a resident of Blount County, Tennessee, and at all relevant times was the Athletic Director of ACS and employed by and in the course and scope of

3

his employment with Defendant ACBE. Service of process may be affected on John E. Owings, Attorney for the Alcoa City Board of Education and Alcoa City Schools, at 800 Riverview Tower, 900 S. Gay Street, Knoxville, TN 37902-1800.

14.    Defendant Brian Gossett is a resident of Blount County, Tennessee, and at all relevant times was the Head Coach of the ACS boys' wrestling team and employed by and in the course and scope of his employment with Defendant ACBE. Service of process may be affected on John E. Owings, Attorney for the Alcoa City Board of Education and Alcoa City Schools, at 800 Riverview Tower, 900 S. Gay Street, Knoxville, TN 37902-1800.

## IV.    FACTS

15.    The preceding allegations 1-14 are incorporated herein by reference.

16.    There is a documented history of a lack of supervision in the AMS Gym. Due to the staggering of dismissal times for the intermediate, middle, and high schools, there is a period of approximately 45 minutes where students, ranging from 8-17 years of age, are together and unsupervised in an environment normally designated for wrestling practice.

17.    Parents and at least one ACS school employee have previously expressed concerns to ACS about lack of supervision. This is documented via emails, and orally to various ACS teachers, coaches, and administrators. In fact, one ACS coach responded to a parent's concerns by saying, "If you have an issue (with respect to supervision), then you come supervise." Which that parent did for approximately 2 ½ months.

18.    It is known internally that Defendant Dr. Bell routinely admonishes ACS staff to supervise students at all times.

19.    The history and pattern of lack of supervision of the AMS gym is not disputable.

20.     On January 11, 2018 at approximately 3:30 p.m., E.R. was in the AMS Gym, unsupervised, with students appearing to be ages ranging from (7-8) years of age to at least (16) years of age.

21.     At approximately 3:41 p.m., E.R., was wrestled down by two older boys, restrained and assaulted. Immediately following he called his mother Brandy T. Robinson and law enforcement arrived on the scene.

22.     E.R. was taken to the New Hope Blount County Children's Advocacy Center ("CAC") where he gave a detailed forensic interview. He reported the following:

a.      Being physically wrestled down against his will;

b.      Unable to fight off the attackers;

c.      His penis and testicles being pinched and pulled;

d.      Repeated attempts being made to pull his pants down;

e.      His rectum attempted to be penetrated; (he reports his clothes were not removed, however, he also reports significant pain to his rectum); it is unclear if his pants were removed and whether he was actually penetrated.

f.      One attacker "tea bags" him or put his genitals in E.R.'s mouth area;

g.      One attacker simulates a sex act from behind on multiple occasions;

h.      E.R. reports being elbowed and "body slammed" repeatedly;

i.      E.R. reports hearing "come on, let's rape him.";

j.      E.R. reports hearing laughter;

k.      Upon being released, he runs out of the area and calls his mother.

l.      E.R. stated to his parents that he could no longer participate in wrestling due to

the assault and was taken to the school to return his wrestling uniform and notify the coaches of his intent to quit the team;

m.    Coach Gossett reportedly thanked (E.R.), and an assistant coach also present then said "that reminds me, we need to get L.W. (one of the attackers) a new uniform."

23.    All of the above described assault is supported in the entirety by video evidence; however, a copy of which has been denied to the Plaintiffs despite the repeated requests to the Alcoa Police Department and ACS attorney.

24.    Further investigation reveals that E.R. has been subject to bullying previously by one of the attackers while at ACS. That bullying was reported to ACS School Officials. No action was ever taken by the ACS.

25.    According to the AMS Student Handbook, the school's Bullying Policy is as follows:

### NO-BULLYING PROGRAM

The overall goal of AMS is to empower students to report bullying behaviors. A student is being bullied when he or she is exposed, repeatedly and over time, to negative actions. Our school staff will intervene and issue consequences for bullying behaviors that have been reported. Students who bully will receive appropriate consequences to help them realize that bullying behavior is not appropriate and will not be tolerated at school.

26.    E.R.'s attackers did not face any consequences for any prior bullying nor for the immediately reported bullying and sexual harassment of E.R. In fact, the very day of the incident the Defendants allowed the students to participate in a wrestling match.

27.    The Alcoa City Board of Education's Policy Manual also addresses Harassment and Bullying under Section 6.304 as follows:

6

The Alcoa City Board of Education has determined that a safe, civil, and supportive environment in school is necessary for students to learn and achieve high academic standards. In order to maintain that environment, acts of bullying, cyber-bullying, discrimination, harassment, hazing or any other victimization of students, based on any actual or perceived traits or characteristics, are prohibited.

This policy shall be disseminated annually to all school staff, students, and parents. This policy shall cover employees, employees' behaviors, students and students' behaviors while on school property, at any school-sponsored activity, on school-provided equipment or transportation, or at any official school bus stop. If the act takes place off school property or outside of a school-sponsored activity, this policy is in effect if the conduct is directed specifically at a student or students and has the effect of creating a hostile educational environment or otherwise creating a substantial disruption to the education environment or learning process.

Building administrators are responsible for educating and training their respective staff and students as to the definition and recognition of violations of this policy.

**DEFINITIONS**
*Bullying/Intimidation/Harassment* - An act that substantially interferes with a student's educational benefits, opportunities, or performance, and the act has the effect of:

- Physically harming a student or damaging a student's property;
- Knowingly placing a student or students in reasonable fear of physical harm to the
  student or damage to the student's property;
- Causing emotional distress to a student or students; or
- Creating a hostile educational environment.

Bullying, intimidation, or harassment may also be unwelcome conduct based on a protected class (race, nationality, origin, color, gender, age, disability, religion) that is severe, pervasive, or persistent and creates a hostile environment.

*Cyber-bullying* - A form of bullying undertaken through the use of electronic devices. Electronic devices include, but are not limited to, telephones, cellular phones or other wireless telecommunication devices, text messaging, emails, social networking sites, instant messaging, videos, web sites or fake profiles.

*Hazing* - An intentional or reckless act by a student or group of students that is directed against any other student(s) that endangers the mental or physical health or safety of the student(s) or that induces or coerces a student to endanger his/her mental or physical health or safety. Coaches and other employees of the school district shall not encourage, permit, condone or tolerate hazing activities.

7

"Hazing" does not include customary athletic events or similar contest or competitions and is limited to those actions taken and situations created in connection with initiation into or affiliation with any organization.

## COMPLAINTS AND INVESTIGATIONS

Alleged victims of the above-referenced offenses shall report these incidents immediately to a teacher, counselor or building administrator. All school employees are required to report alleged violations of this policy to the principal/designee. All other members of the school community, including students, parents, volunteers, and visitors, are encouraged to report any act that may be a violation of this policy.

While reports may be made anonymously, an individual's need for confidentiality must be balanced with obligations to cooperate with police investigations or legal proceedings, to provide due process to the accused, to conduct a thorough investigation or to take necessary actions to resolve a complaint, and the identity of parties and witnesses may be disclosed in appropriate circumstances to individuals with a need to know.

The principal/designee at each school shall be responsible for investigating and resolving complaints. The principal/designee is responsible for determining whether an alleged act constitutes a violation of this policy, and such act shall be held to violate this policy when it meets one of the following conditions:

It places the student in reasonable fear or harm for the student's person or property;

It has a substantially detrimental effect on the student's physical or mental health;

It has the effect of substantially interfering with the student's academic performance; or

It has the effect of substantially interfering with the student's ability to participate in or benefit from the services, activities, or privileges provided by a school.

Upon the determination of a violation, the principal/designee shall conduct a prompt, thorough, and complete investigation of each alleged incident. Within the parameters of the federal Family Educational Rights and Privacy Act (FERPA) at 20 U.S.C. § 1232g, a written report on the investigation will be delivered to the parents of the complainant, parents of the accused students and to the Director of Schools.

## RESPONSE AND PREVENTION

School administrators shall consider the nature and circumstances of the incident, the age of the violator, the degree of harm, previous incidences or patterns of behavior, or any other factors, as appropriate to properly respond to each situation.

A substantiated charge against an employee shall result in disciplinary action up to and including termination. A substantiated charge against a student may result in corrective or disciplinary action up to and including suspension.

8

An employee disciplined for violation of this policy may appeal the decision by contacting the Federal Rights Coordinator. Any student disciplined for violation of this policy may appeal the decision in accordance with disciplinary policies and procedures.

**REPORTS**

When a complaint is filed alleging a violation of this policy where there is physical harm or the threat of physical harm to a student or a student's property, the principal/designee of each middle school, junior high school, or high school shall report the findings and any disciplinary actions taken to the director of schools and the chair of the board of education.

By July 1 of each year, the director of schools/designee shall prepare a report of all of the bullying cases brought to the attention of school officials during the prior academic year. The report shall also indicate how the cases were resolved and/or the reasons they are still pending. This report shall be presented to the board of education at its regular July meeting, and it shall be submitted to the state department of education by August 1.

The director of schools shall develop forms and procedures to ensure compliance with the requirements of this policy and TCA 49-6-1016.

**RETALIATION AND FALSE ACCUSATIONS**

Retaliation against any person who reports or assists in any investigation of an act alleged in this policy is prohibited. The consequences and appropriate remedial action for a person who engages in retaliation shall be determined by the administrator after consideration of the nature, severity, and circumstances of the act.

False accusations accusing another person of having committed an act prohibited under this policy are prohibited. The consequences and appropriate remedial action for a person found to have falsely accused another may range from positive behavioral interventions up to and including suspension and expulsion.

28.     No actions were taken by Defendants to investigate or reconcile the acts complained

herein in accordance with the stated written procedures in the harassment and anti-bullying

policies.

29.     Alcoa Police Department Detective Kris Sanders led the investigation by the Alcoa Police Department and confirmed to Plaintiffs that the statement given by E.R. is supported by video evidence.  Moreover, Detective Sanders advised Plaintiffs to retain counsel.

30.     On February 5, 2018, Plaintiffs counsel was permitted to view the surveillance video at the office of Detective Sanders.

31.     Detective Sanders advised that he attempted to take the statement of one attacker, and it appeared they retained legal counsel and declined to cooperate with the investigation.

32.     Detective Sanders further advised hat he was attempting to speak to the other student involved; and would contact all students to determine what was witnessed.

33.     Detective Sanders reported that "the Coach has stated that he saw the video and that nothing occurred and that there is nothing to worry about."

34.     Following the incident, E.R. reported difficulty sleeping, increased anxiety, and did not want to attend school. He also requested to do his work in the Principal's office as he was once allowed to do so when he received a black eye at school.

35.     Most troubling, E.R. exhibited signs of victimization following the attack, asking if this was his fault and self defeating propensities which was addressed with a therapist.

36.     E.R. has five younger siblings and the family reports that this has affected all of them with increased anxiety and stress. E.R.'s parents have suffered increased stress and anxieties in efforting to provide proper support for E.R. and maintaining the familial balance.

37.     Detective Sanders initially advised that he would complete his investigation and refer the matter to the District Attorney's Office for prosecution. As of this filing, the status of the investigation is unknown by Plaintiffs.

38.     On February 13, 2018, undersigned requested by letter to Detective Sanders a copy of the surveillance video and CAC Statement.

39.     On February 13, 2018, undersigned requested E.R.'s forensic interview from Ms. Christina Copland with the CAC.

40.     On February 14, 2018, Detective Sanders advised Plaintiffs that because the case was still open and active that the video would not be released to him or the family until the investigation is closed; that is the department's normal procedure. Detective Sanders offered the opportunity for the family to schedule an appointment to view the video at the police department if they wished to do so, but it would not be released. He again advised that the results of the investigation would be presented to Blount County Assistant District Attorney Ashley Salem at its conclusion, and she would make the determination as to whether or not criminal charges would be filed.

41.     On February 16, 2018, undersigned was advised by letter from City/School Attorney John E. Owings of Owings, Wilson & Coleman that he was general counsel for Defendants ACBE and ACS *and* the Alcoa City Police Department and to direct all communications to him.[1]

42.     On February 16, 2018, undersigned spoke with City/School Attorney Owings by phone. Undersigned followed-up the phone call by letter to request and address the following:

   a.  That the surveillance video of the incident be submitted to forensic analysis to enhance the images for clarity.
   b.  Advised that one of the individuals involved confronted one of E.R.'s older brothers  in the school parking lot asking "If his parents had a problem with him."

---

[1] It should be noted that the apparent conflict of interest between the Owings Firm represents and advises the Alcoa City Police Department, and was so doing in this investigation, also represents the Alcoa City Schools, who would be responsible if wrongdoing were found by the investigation, may rise to additional legal claims against the Alcoa City Police Department.

11

Undersigned requested that ACS take the steps they deem necessary to not place any student at risk as this matter unfolds.

   c.  Advised that E.R. is in therapy and exhibiting behaviors consistent with trauma. Undersigned asked that ACS take appropriate measures to ensure that he is not experiencing any further issues while at school and with any students. It was further requested that E.R. be given a specific person as a resource that he can go to while at school if he experienced any problems.

   d.  Advised that is common knowledge that the auxiliary gym is often unsupervised and hoped that measures were being taken to ensure that the issue is remedied.

43.    On February 27, 2018, undersigned sent a letter to Detective Sanders to inquire the status of the investigation.

44.    On February 27, 2018, undersigned's paralegal spoke with Counsel for the CAC, Ms. Amy Smith. Attorney Smith advised the following:

   a.  She could not provide a copy of the video becaused the matter is still under criminal investigation;

   b.  Ms. Copland stated that she was told by APD that the investigation was for all intents and purposes "over", but it had not been made official yet.

   c.  It was Ms. Smith's understanding that they would not be moving forward with prosecution.

45.    On February 28, 2018, undersigned requested from City/School Attorney Owings a copy of the surveillance video and the CAC Statement pursuant to TCA 37-1-605(d)(2).

46.    On March 1, 2018, undersigned sent City/School Attorney Owings a letter addressing the following:

   a.  In E.R.'s therapy session of the same date, he was extremely emotional, distraught, and reported tremendous anxiety indicated that he has had negative thoughts towards himself. Undersigned was ensuring the appropriate steps with mental health experts to address the situation were taken.

   b.  E.R. be provided someone be designated as a safe place for him to go to if the need arose at school. Vice Principal Bledsoe was E.R.'s request. This was initially requested in the February 16, 2017 and had not been acknowledged by ACS.

   c.  E.R. reported that another student A.T. told E.R. that "there was a video" and "nothing happened", and he was "making stuff up".

47.     On March 1, 2018, City/School Attorney Owings advised undersigned as follows:

   a.  The APD investigation was ongoing and they were informed it had not concluded;
   b.  ACS agreed that Principal Bledsoe could be E.R.'s safe place person to go to when the need arise;
   c.  The matter had been turned over to the DA's office for further investigation or prosecution.

48.     On March 7, 2018,  City/School Attorney Owings and his law partner, Attorney Shelly Wilson advised undesigned by joint letter the following:

   a.  Neither ACS or APD would be providing the video or CAC statement;
   b.  The APD investigation was ongoing and they were informed it had not concluded.
   c.  City/School Attorney Owings referred undersigned to Attorney Shelly Wilson as counsel for APD and to direct all further communication in relation to this matter to her.
   d.  Undersigned's record request for the surveillance video was denied.
   e.  That undersigned must request the CAC Statement from DCS.

49.     On March 14, 2018, undersigned requested by letter to CAC Attorney Amy Smith to preserve the January 11, 2018 forensic interview video recording.

50.     On March 14, 2018, undersigned wrote to City/School Attorney Owings to confirm his clients ACS and APD would not intentionally, accidentally, or otherwise, destroy or cause to be lost, the surveillance video of the alleged assault.

51.     As of this filing, nearly one year later, the Plaintiffs have not been advised of the status of the APD investigation by Attorney Owings or Wilson.

52.     As of this filing, Plaintiffs have not been made aware of any independent internal investigation by Defendant ACS. In fact, as of this filing, Plaintiffs have received no information or communications from anyone associated with the City of Alcoa School System or Police Department since March 7, 2018.

# V. CAUSES OF ACTION

**COUNT I:** **Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C.**
**§ 1981,** *et seq.*
**(School Defendant)**

53.     The preceding allegations 1-52  are incorporated herein by reference.

54.     Defendant ACBE receives federal funding under Title IX of the Educational Amendments of 1972, 10 U.S.C. 1681(a).

55.     Defendant ACBE failed to supervise school property, specifically, Defendants failed to address and provide supervision in the area of the gym that has a documented history of parent concerns due to the lack of supervision.

56.      E.R. was a victim of student-on-student sexual assault and harassment prohibited by 20 U.S.C. 1681.

57.     The sexual harassment suffered by E.R. was severe pervasive and objectively offensive.

58.     The sexual harassment suffered by E.R. created a hostile environment at ACS.

59.     The sexual harassment deprived E.R. of the educational opportunities provided by ACBE.

60.     Defendant ACBE, through its Director, Dr. Brian Bell, Principal Michelle Knight, Principal Scott Porter, Athletic Director Josh Stephens and its employee Brian Gossett, had constructive and actual knowledge of the harassment suffered by E.R.

61.     Defendant Bell and Defendant Knight had the authority and capacity to investigate and discipline the students perpetrating the student-on-student sexual harassment.

62.     Defendant Bell and Defendant Knight had the authority and capacity to institute corrective measures to prevent and stop the student-on-student harassment and failed to do so.

63.     Specifically, Defendant ACBE was deliberately indifferent to the sexual harassment suffered by E.R. and their response to the harassment was unreasonable. Specifically, Defendant ACBE violated Title IX by, inter alia:

a.   choosing to take no action to protect E.R., despite knowledge of a need to supervise, discipline, or take other corrective action to prevent bullying, and harassment, including violent, gender-based hazing and sexual assault occurring within the sports programs;

b.   being deliberately indifferent to and failing to take action on known discrimination and harassment suffered by E.R. prior to the sexual assault;

c.   being deliberately indifferent to the known allegations of violent, gender based hazing, harassment, intimidation and the unique dangers to students'

d.   failing to maintain and enforce an adequate policy against hazing and bullying or, alternatively, being deliberately indifferent thereto, as required by T.C.A. § 49-2-120;

e.   creating a climate which tolerated violent, gender-based hazing, harassment, and intimidation, within the wrestling team, or, alternatively, being deliberately indifferent thereto;

f.   failing to provide policy or training for its employees, faculty members, coaches, or volunteers about bullying, sexual harassment and assault, sexual abuse, child abuse, or mandatory reporting, thereby creating a climate where such misconduct was tolerated and encouraged to continue without consequence;

g.   failing to report prior known abuse, as required by T.C.A. § 37-1-403 and policy, thereby creating a climate where such misconduct was tolerated and encouraged to continue without consequence;

15

h. failing to conduct their own internal investigation into the assault and other allegations of misconduct and maintaining a policy of refusing to conduct internal investigations in contexts where law enforcement becomes involved;

i. failing to investigate, inform parents, and report harassment, intimidation, and bullying occurring, as required by T.C.A. § 49-6 4503;

j. failing to report the assault, as required by T.C.A. § 37-1-403 and policy to any and all regulatory authorities having jurisdiction over the matter as a matter of law.

64. As a direct and proximate result of Defendants' action, inaction, and deliberate indifference, E.R. sustained and continues to sustain injuries for which he is entitled to be compensated.

65. Defendant ACBE is liable under the doctrine of respondeat superior for the actions of its employees.

**COUNT II: Violation of Plaintiff's Constitutional Rights, Brought Under 42 U.S.C. § 1983 (All Defendants)**

66. The preceding allegations 1-65 are incorporated herein by reference.

67. Defendants failed to supervise school property, specifically, Defendants failed to address and provide supervision in the area of the gym that has a documented history of parent concerns due to the lack of supervision.

68. Defendants had a duty to maintain and enforce a written policy or rules prohibiting student hazing, as required by T.C.A. § 49-2-120, and failed to do so.

69. Defendants had a duty to maintain and enforce a policy and/or training for their employees, administrators, faculty members, staff, volunteers, and other agents regarding how to

identify, investigate, and respond to student hazing and/or student-on-student abuse and sexual assault, and failed to do so.

70.    Defendants' absence of policies and failure to train its employees and agents is closely related to or caused the discrimination and violent, gender-based hazing against E.R. violating his Constitutional right to bodily integrity and his property right to education.

71.    All Defendants had actual notice and knowledge of the dangers of sexual harassment and assault faced by its young male student-athletes, and E.R. specifically, yet took no meaningful remedial or disciplinary action, choosing not to investigate or supervise activity in the boys' locker room and elsewhere, which allowed the discrimination, harassment, and violent, gender-based hazing to occur.

72.    As a direct and natural consequence of Defendants' action, inaction, and deliberate indifference and violations of his Constitutional rights, E.R. suffered, and continues to suffer, including but not limited to, physical injuries, emotional distress, psychological trauma, and denial of education and educational opportunities.

73.    As a direct and proximate result of Defendants' action, inaction, and deliberate indifference and violations of his Constitutional rights, E.R. sustained and continues to sustain injuries for which he is entitled to be compensated.

### COUNT III: Tennessee Government Tort Liability
### (All Defendants)

74.    The preceding allegations 1-73 are incorporated herein by reference.

75.    Defendants failed to supervise school property, specifically, Defendants failed to address and provide supervision in the area of the gym that has a documented history of parent concerns due to the lack of supervision.

17

76.     Defendants owed Plaintiff common law duties that were breached and are therefore liable under the Tennessee Government Tort Liability Act, T.C.A. § 29-20-205 for failure to exercise reasonable care to supervise and protect E.R., including from the foreseeable intentional acts of third parties that involved hazing and violent misconduct.

77.     Defendants, through its employees breached these duties and was negligent by, among other things:

   a.  failing to appropriately supervise the area in the Gym where the acts occurred and under their exclusive custody and care;

   b.  failing to investigate and discipline past reports of bullying;

   c.  failing to have in place and/or enforce policies to protect male student athletes from bullying, violent hazing, including harassment, intimidation, sexual assault and rape;

   d.  failing to take precautions to prevent known dangers of violent, gender based hazing within sports programs;

   e.  failing to act reasonably under the circumstances; and

   f.  other negligent acts and omissions.

78.     As a direct and proximate result of Defendants' negligence, E.R. sustained and continues to sustain injuries for which he is entitled to be compensated.

## VI.    DAMAGES

79.     The preceding allegations 1-78 are incorporated herein by reference.

80.     As a result of the assault on January 11, 2018, E.R. was permanently harmed and has been regularly undergoing psychological counseling.

81.     As a result of the harm E.R. sustained on January 11, 2018, he suffered damages which include, but are not limited to, the following:

   a.  past and future physical pain and suffering, mental anguish and anxiety, public

18

humiliation and embarrassment, resulting from officially condoned sexual harassment;

b. costs of past and future counseling and other related medical services;

c. loss of enjoyment of life;

d. reasonable attorney's fees; and

e. other damages not known at this time but which will be proven at the trial herein.

82. Plaintiff seeks an award of damages in an amount to be determined by the jury.

## VII.   EXEMPLARY DAMAGES

83. The preceding allegations 1-82 are incorporated herein by reference.

84. The actions of the Defendants collectively and individually were reckless, grossly negligent and deliberately indifferent.

## VIII.   JURY DEMAND

Plaintiffs hereby demand that this matter be tried to a jury.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1. An award of compensatory damages in an amount fair to be proven at trial for minor Plaintiff's physical and mental suffering, medical expenses, including monitoring and future care, loss of enjoyment of life, and any other damages properly classified as compensatory damages to be determined by a jury at a trial.

2. Punitive damages against Defendants to be determined by a jury at trial.

3. An award of attorney fees and costs; and

19

4.      Such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

THE ERWIN LAW FIRM

/s/ Jacob E. Erwin
JACOB E. ERWIN, BPR #020728
P.O. Box 6650
Maryville, TN 37802
(865) 851-0644
jake@erwinlawtn.com
*Attorney for Plaintiffs*
